[Cite as *In re J.Y.*, 2025-Ohio-5308.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| In re J.Y. | : | Case No. 24CA8 |
| | : | |
| Alleged Juvenile Delinquent. | : | <u>DECISION AND</u> |
| | : | <u>JUDGMENT ENTRY</u> |

_____

<u>APPEARANCES:</u>

James K. Stanley, Meigs County Prosecuting Attorney, and Jeff Adkins, Meigs County Assistant Prosecuting Attorney, Pomeroy, Ohio, for appellant.

George J. Cosenza, Cosenza Law Office, Parkersburg, West Virginia, for appellee.
_____

Smith, P.J.

{¶1} Appellant, the State of Ohio, appeals the judgment of the Meigs County Court of Common Pleas, Juvenile Division, dismissing the case against appellee, J.Y., with prejudice. On appeal, the State contends that the trial court erred in ruling that the only possible sanction for the prosecution not providing a statement of the victim on discovery was a dismissal with prejudice. Because we find the trial court did not abuse its discretion in dismissing the case, we find no merit to the State's argument. Accordingly, the judgment of the trial court is affirmed.

FACTS

{¶2} Appellee was charged with second-degree felonious assault in violation of R.C. 2903.11(A)(2) on December 19, 2022.  The complaint alleged that appellee "did knowingly strike [N.H.] his stepfather on or about the head/face multiple times with his fist causing severe injuries to [N.H.]."  On December 22, 2022, the State filed a motion to amend the language contained in the complaint to state that appellee "did knowingly cause serious physical harm to [N.H.]."  It also sought to amend the complaint to state that the offense was a violation of R.C. 2903.11(A)(1) rather than R.C. 2903.11(A)(2).  The trial court allowed the amendment on December 27, 2022, and an amended complaint was filed on December 28, 2022, charging appellee with felonious assault in violation of R.C. 2903.11(A)(1) and 2151.022, specifying that the offense was a fifth-degree felony. Then, on January 5, 2023, the State filed a motion seeking to amend the amended complaint, explaining that the amended complaint incorrectly identified the felony as a fifth-degree felony, rather than a second-degree felony, and also incorrectly listed the "delinquent child" code section as R.C. 2151.022 instead of the correct section, R.C. 2151.021.  The trial court again permitted the amendment.

{¶3} The record reveals that the charge stemmed from an incident that occurred at appellee's girlfriend's parents' house when the victim, N.H., who is appellee's stepfather, arrived to confront appellee about some family issues they

had been having.  When N.H. arrived and asked to speak with appellee, appellee's

girlfriend's parents, A.L and J.L., were present.  After appellee descended the

stairs to come to meet N.H., N.H. was attacked, beaten, and seriously injured.

N.H. provided a statement to law enforcement at the hospital, essentially indicating

appellee approached him from the front, but stating that he didn't know who struck

him.  The State provided supplemental discovery on March 22, 2023, informing

appellee that N.H. had made a subsequent verbal statement that "he now

remembers being hit more while on the ground in the living room."

{¶4} An adjudication hearing was scheduled to begin on April 10, 2024,

however, it had to be continued due to supplemental discovery provided by the

State on the eve of trial.  The State informed appellee on the evening before the

start of trial that it had discovered a statement of appellee that was made to CPS

Supervisor, Rebecca Wilford, which was contained in a report authored by

Wilford.  Appellee's statement was made in response to Wilford asking appellee

what had happened during the incident, so that she could determine an appropriate

placement.

{¶5} Thereafter, the matter came on for adjudication on June 20, 2024.  The

State's first witness was A.H., appellee's mother.  N.H., appellee's stepfather and

the victim herein, testified next.  He testified that when he arrived at the residence

where the incident occurred, A.L., appellee's girlfriend's mother, called upstairs

for appellee to come down. He testified that before appellee came down, J.L, appellee's girlfriend's father, entered the room, walked behind N.H., and "started emptying his pockets." N.H. testified that he engaged in a conversation with appellee as he was either at the top of the stairs or was coming down the stairs. He testified that appellee came down the stairs, got in his face, cursed him, and threatened him. N.H. testified that he saw a flash and that was all he remembered at first. He testified that J.L. had been in a chair behind him when appellee was approaching. He further testified that at some point later he remembered more details, including that he was hit again after he was on the ground and that he heard A.L. state: "I need to record this." N.H. went on to testify regarding a second statement that he had provided to the prosecutor and the victim's advocate.

{¶6} At that juncture, defense counsel requested to address the court. A bench hearing was conducted during which it became clear that N.H. had provided a second statement to the prosecutor which had not been provided during discovery. The second statement provided additional information that will be discussed in more detail below, but which indicated N.H. later remembered that he had been pushed from behind, and also that A.L. had recorded the incident on her phone. Arguments by counsel led the court to call a recess during which time the State confirmed that the second statement of N.H. was received in its office, was in its file, but had not been provided to the defense. Finding the evidence to be

crucial and "potentially exculpatory," the trial court dismissed the case with prejudice at the request of defense counsel and over the objections of the State.[1]

{¶7} The State then filed its timely appeal of the trial court's judgment, setting forth a single assignment of error for our review.

### ASSIGNMENT OF ERROR

I.   THE TRIAL COURT ERRED IN RULING THAT THE ONLY POSSIBLE SANCTION FOR THE PROSECUTION NOT PROVIDING A STATEMENT OF THE VICTIM ON DISCOVERY WAS A DISMISSAL WITH PREJUDICE.

### ASSIGNMENT OF ERROR I

{¶8} In its sole assignment of error, the State contends that the trial court erred in dismissing the case against appellee with prejudice after it determined that dismissal was the only possible sanction for the State's failure to provide a statement of the victim as part of discovery. Appellee responds by arguing that the trial court had the discretion to determine, under Crim.R. 16(E), an appropriate sanction for a discovery violation and that absent an argument the trial court abused its discretion, the judgment of the trial court should be affirmed.[2] Appellee

---

[1] We note that four exhibits introduced by the State were accepted and labeled during the adjudication hearing and appear in the table of contents. Additionally, the victim's supplemental/second statement was introduced into evidence, reviewed by the judge, and defense counsel requested that the document be made part of the record. There was no objection to the admission of the document, the trial court had the document in its possession, and appeared to assent to the admission of the document. However, none of the labeled exhibits or the victim's supplemental statement were transmitted to this Court along with the record. Although this Court sought to have the county clerk supplement the appellate record with the transcripts, the clerk was unable to locate State's Exhibits 1-4. The clerk did, however, locate the victim's supplemental statement and it was provided to us.

[2] Although Crim.R. 16(E) previously addressed the "Regulation of Discovery," the rule was amended on July 1, 2010, and the regulation of discovery is now addressed in Crim.R. 16(L).

points out that the State had committed a prior discovery violation which had already resulted in one continuance, and that it was only after a second violation was brought to light midway through the adjudication hearing that the trial court dismissed the case. Appellee essentially argues that the trial court did not abuse its discretion in dismissing the case against him with prejudice, despite the severity of the sanction.

## Standard of Review

{¶9} The admission of evidence is within the sound discretion of the trial court. *State v. Jackson*, 2013-Ohio-2628, ¶ 16 (4th Dist.); *State v. Dixon*, 2010-Ohio-5032, ¶ 33 (4th Dist.), citing *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.*, 63 Ohio St.3d 498, 506 (1992); *Wilmington Steel Products, Inc. v. Cleveland Elec. Illuminating Co.*, 60 Ohio St.3d 120, 122 (1991). When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *In re Jane Doe 1*, 57 Ohio St.3d 135, 138 (1991), citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990).

{¶10} Furthermore, the control of discovery and sanctions for violations of that process are generally left to the discretion of the trial court. *State v.*

*Bennington*, 2013-Ohio-3772, ¶ 28 (4th Dist.), citing *State v, Craig*, 2002-Ohio-1433, ¶ 33 (4th Dist. Mar. 26, 2002); *see also State v. Otte*, 74 Ohio St.3d 555, 563 (1996). Therefore, the "abuse of discretion" standard governs the alleged error complained of by the State.

Legal Analysis

{¶11} The State contends that the trial court's decision to dismiss the underlying case with prejudice was unreasonable and that lesser sanctions such as granting a recess or a continuance would have been more appropriate. It argues that although it had committed two discovery violations, the first violation occurred as a result of newly discovered evidence, which it promptly provided to appellee the day prior to trial, and the second occurred as a result of a mix up in the prosecutor's office, which was not willful. The State also argues that to the extent the supplemental statement indicated that a video recording of the incident might exist, such recording would have been made by appellee's girlfriend's mother. The State therefore argues that appellee should have had access to it independent of the State if it actually existed.

{¶12} Appellee contends that the supplemental statement provided by the victim was exculpatory because it contradicted an earlier statement the victim provided to the police. Appellee further contends that not only was it exculpatory, it was essential to prepare for cross-examination of the victim. Appellee notes that

the trial court had already imposed a more lenient sanction for the State's first discovery violation, which resulted in a continuance of a previously scheduled trial date. He further points out that the State's second discovery violation, at issue herein, did not come to light until midway through the victim's adjudication hearing testimony and that had the victim not testified, appellee would have never known the statement existed. Appellee contends that the trial court's dismissal of the case was not inconsistent with the purpose of discovery rules in this situation, regardless of whether or not the State's actions were willful.

{¶13} The purpose of the discovery rules is to prevent surprise and the secreting of evidence favorable to the other party. *State v. Lawhorn*, 2012-Ohio-253, ¶ 7 (4th Dist.); *City of Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3 (1987); *see also State v. Warren*, 2004-Ohio-5599, ¶ 51 (8th Dist.). The current version of Crim.R. 16, as amended on July 1, 2010, and which governs discovery, provides in section (A) that "[a]ll duties and remedies are subject to a standard of due diligence, apply to the defense and the prosecution equally, and are intended to be reciprocal." *Lawhorn, supra*.

{¶14} Crim.R. 16 provides, in pertinent part, as follows:

(B) Discovery: Right to Copy or Photograph. Upon receipt of a written demand for discovery by the defendant, and except as provided in division (C), (D), (E), (F), or (J) of this rule, the prosecuting attorney shall provide copies or photographs, or permit counsel for the defendant to copy or photograph, the following items related to the particular case indictment,

information, or complaint, and which are material to the preparation of a defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant, within the possession of, or reasonably available to the state, subject to the provisions of this rule:

* * *

(5) Any evidence favorable to the defendant and material to guilt or punishment;

* * *

(7) Any written or recorded statement by a witness in the state's case-in-chief, or that it reasonably anticipates calling as a witness in rebuttal.

Here, the State concedes the supplement to the victim's statement was made in the prosecutor's office, was part of its file, and should have been provided to appellee as part of discovery.

{¶15} Further, Crim.R. 16(L), which governs regulation of discovery, provides as follows in section (1):

The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

{¶16} As set forth above, " '[t]he imposition of sanctions for a discovery violation is generally within the sound discretion of the trial court.' " *Lawhorn,*

*supra*, at ¶ 9, quoting *State v. Sinkfield*, 2001 WL 1517314, *9 (2d Dist. Nov. 30, 2001); in turn citing *State v. Parson*, 6 Ohio St.3d 442, 445 (1983). However, prior to imposing one of the allowed orders provided in Crim.R. 16(L), the trial court must inquire into the circumstances surrounding the violation and should impose the least severe sanction that is consistent with the purpose of the rules of discovery. *City of Lakewood v. Papadelis*, *supra*, at paragraph two of the syllabus. The factors to be considered when making this inquiry are: 1) the extent of surprise or prejudice to the State; 2) the impact exclusion of the witness would have on the evidence and the outcome; 3) whether the violation was in bad faith; and 4) the effectiveness of less severe sanctions. *Id.* at 5; *State v. Sinkfield*, *supra,* at *8. "The rule applies equally to discovery violations committed by the State or by a criminal defendant." *State v. Huff*, 2015-Ohio-5589, ¶ 19 (4th Dist.), citing *State v. Dillard*, 2014-Ohio-4974, ¶ 15 (4th Dist.); *State v. Darmond*, 2013-Ohio-966, syllabus; *see also In re D.M.*, 2014-Ohio-3628, ¶ 15.

{¶17} A review of the adjudication hearing transcript reveals that the victim was the second witness to testify on behalf of the State. Upon cross-examination, the victim referenced the first statement that he provided to law enforcement while he was hospitalized the day after the incident. He then testified that he had provided a subsequent statement to the victim's advocate and the prosecutor, which was taken down in the prosecutor's office. It appears from the record that

the State failed to provide the victim's subsequent statement to appellee, which

stated as follows regarding the events on the night of the incident:

2.  As [J.Y.] was coming down the stairs [A.L.] said I need to get my phone to record this.

1.  [A.L.] hollered for [J.L.] and Abe.

3.  I felt pressure on my back like I was being pushed forward.

4.  Flash came from the right[.][3]

The statement was dated January 9, 2023, demonstrating that the State had the

statement in its possession for over 18 months at the time of the adjudication.

{¶18} At this point, defense counsel asked to address the court.  The

courtroom was cleared and a bench conference was held.  Defense counsel

requested a dismissal of the case based upon prosecutorial misconduct, citing the

State's failure to provide the defense with the victim's second statement.  Defense

counsel referenced the State's prior discovery violation which had occurred the

night before the date of the first scheduled adjudication and which resulted in a

continuance of the adjudication.  Defense counsel argued that the failure to provide

the statement currently at issue had affected his ability to prepare for trial, in

particular his ability to prepare for cross-examination.  Arguments by counsel

---

[3] The victim's supplemental statement was written out of order, and it appears herein as it was written.

ensued, leading the court to call a recess in order for the State to check its file to determine whether the supplemental statement had been provided to the defense.

{¶19} When the proceedings resumed, the prosecutor informed the court that the statement had not been provided in discovery. The prosecutor explained that the victim's supplemental statement was given to a detective while in the prosecutor's office but was not provided to the staff member that handles discovery and, therefore, the statement was not provided in discovery. The trial court then reviewed the contents of the document and confirmed with counsel that the statement was the only document referencing a statement by A.L. that she was going to record the incident with her phone. Defense counsel then renewed his request for dismissal, citing the fact that the adjudication had already been continued once before as a result of a discovery violation by the State. In response, the prosecutor stated that he was without excuse because he knew it was in his file, explaining as follows:

> I guess I figured it was provided in discovery because we, um the statement was made to our investigator, it wasn't even the Sheriff's Department, and I assumed there was a transfer from the investigator to the, the person who gives um, who fills out discovery, but that wasn't [sic] happened, that didn't happen and I didn't check on it.

The prosecutor then stated that although the error was unintentional, "that doesn't excuse them not getting it."

{¶20} At this point, the trial court interjected as follows:

I mean I feel like this information contained in here is very crucial. I mean the fact that [A.L.] may have recorded this on her phone and you did not get a chance to investigate that, and the fact that, well I mean he felt pressure on his back like he was being pushed forward, that's pretty significant * * *.

* * *

Okay. All right. The being pushed from behind and the fact that it may have been recorded, and ah I think were crucial, extremely crucial parts of this, and ah I don't see that I have any choice but to dismiss this case for failing to provide the information to the (inaudible).

{¶21} In response, the State argued that A.L. had not testified, that the State did not have her phone and had no way of knowing whether or not the incident was actually recorded. The trial court then reasoned as follows on the record:

Okay. Well, I mean she was one of the people who was present for his um for whatever happened to [the victim], and ah (inaudible) which [the victim] has testified that he does not know who hit him. Um did not see that happen, and there may be information to clear him on this phone. I don't know what ah, what is contained in that phone, um[.] * * * Right. There may not be anything, but um they should have been at least given a chance to know that that may have existed. Um, so, I'm going to dismiss this for failing to provide (inaudible).

{¶22} The trial court issued a written order June 28, 2024. In its order, the court described the victim's supplemental statement as "potentially exculpatory evidence" and noted that "the Prosecution admitted that there had been a failure to turn over this statement to the defense, despite repeated requests and opportunities

to do so." The court set forth the following reasoning in support of its decision to dismiss the case with prejudice:

> Previously the Court continued the adjudication in this matter due to the failure of the state to disclose a report taken by Meigs County Children's Services detailing statements made by the defendant on the night of the alleged offense.  Said continuance was to allow the defense time to investigate and review the report.  At the time, the state was admonished for failing to provide the discovery and told to make sure that all discovery had been given to defense counsel.
>
> Under Juvenile Rule 24, the "prosecuting attorney shall disclose to repondent's counsel all evidence, known or that may become known to the prosecuting attorney, favorable to the respondent and material to guilt or punishment."
>
> The Court finds that the prosecuting attorney has repeatedly failed to provide essential evidence to the defense in this case.  The evidence withheld in both instances appears to be material to the defendant's guilt.  The Defendant has not been able to investigate this evidence and this has irreparably harmed the defendant in this case to such an extent that the only possible sanction in this instance is a dismissal with prejudice.

{¶23} Thus, when the trial court was informed mid-adjudication that the State had failed to comply with the discovery rules, it paused to inquire into the circumstances.  As set forth above, the trial court held a bench conference to consider the parties' arguments and then called a recess in order for the State to check its files and confirm one way or the other whether the statement at issue had been provided to the defense.  After the recess, the court confirmed that the statement had not been provided to the defense and then heard additional

arguments from the defense regarding the ways in which the State's failure had caused prejudice. We conclude that the trial court's actions satisfied the requirements set forth in *Lakewood v. Papadelis, supra*, which requires a trial court to inquire into the circumstances when confronted with a discovery violation.

{¶24} We next must consider whether the trial court imposed "the least severe sanction that is consistent with the purpose of the rules of discovery." *Lakewood, supra*, at paragraph two of the syllabus. According to *Lakewood*, the factors to be considered in making this determination are 1) the extent of surprise or prejudice to the State; 2) the impact exclusion of the witness would have on the evidence and the outcome; 3) whether the violation was in bad faith; and 4) the effectiveness of less severe sanctions. *Id.* at 5.

{¶25} Here, it was the defendant that was surprised, not the State, and any prejudice that resulted to the State from any sanction imposed occurred due to the State's own actions or inactions in failing to provide discovery as required under both the Criminal Rules and the Juvenile Rules, as well as ordered by the trial court. The impact of the exclusion of the witness's testimony, which was the victim's testimony in this case, would have greatly impacted the defendant as the statement contained what the trial court characterized as "potentially exculpatory evidence." The victim's statement, if excluded, would have deprived appellee from having evidence introduced that suggested the victim was pushed from

behind, despite having previously stated that the defendant approached him from the front, as well as evidence indicating that a video recording of the incident may have been created.

{¶26} Further, although the trial court fell short of classifying the State's discovery violation as being in bad faith, it did find that the State had repeatedly failed to provide discovery despite being previously admonished and ordered to provide discovery as demanded. Finally, regarding the effectiveness of less severe sanctions, the trial court noted that the adjudication hearing had already been continued once before due to a discovery violation by the State. It is also clear from both the hearing transcript and the judgment entry that the trial court believed, based upon the circumstances before it, its only option was to dismiss the case with prejudice. Thus, it appears that the trial court engaged in the required steps and considered the appropriate factors before imposing the sanction of dismissal with prejudice.

{¶27} However, whether the trial court's decision constituted an abuse of discretion is determined by the consideration of another set of factors. In *State v. Darmond, supra*, at ¶ 35, the Supreme Court of Ohio referenced its prior decision in *State v. Parsons*, *supra*, which established three factors "that should govern the trial court's exercise of discretion in imposing a sanction for a discovery violation committed by the prosecution." The *Darmond* Court observed that the three

*Parson* factors a judge should consider are: "(1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefited the accused in the preparation of a defense, and (3) whether the accused was prejudiced." *Darmond* at ¶ 35, citing *Parson* at syllabus. *See also State v. Hale*, 2008-Ohio-3426, ¶ 115. In *Darmond*, it was further observed that "[s]everal of the factors discussed in *Lakewood* are similar to those expounded in *Parson*, including the degree of prejudice to the opposing party and whether the violation was willful or in bad faith." *Darmond* at ¶ 36.

{¶28} Here, with respect to the first factor, although the trial court found that the State's discovery violations were repeated, it did not find that either was willful. However, the second and third factors weigh in favor of affirming the trial court's decision. For instance, the trial court specifically articulated its concern that the undisclosed material would have benefitted the accused in preparation of his defense, citing to the fact that the victim stated that he was pushed from behind and that a witness to the incident stated she was going to record the incident on her phone. The trial court noted that although a recording might not exist, it also might exist, and the defendant "should have been at least given the chance to know that that may have existed."

{¶29} Turning again to the additional *Lakewood* factor, which requires a trial court to consider the effectiveness of a less severe sanction, it is clear that the trial court had previously chosen to impose the sanction of a continuance upon being advised of the State's first discovery violation on the eve of the first scheduled adjudication. Thus, the trial court was clearly aware that it had other options aside from a dismissal. However, it is equally clear that the trial court considered the evidence that was withheld to be "crucial" to defendant's case, "potentially exculpatory," and something which the defendant was prohibited from investigating due to the State's failure to disclose it. Based upon the record before us, we cannot conclude that the trial court abused its discretion in imposing the ultimate sanction of dismissal. Again, an abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *Franklin Cty. Sheriff's Dept., supra*, at 506; *Wilmington Steel Products, Inc., supra*, at 122. This Court has also explained that an abuse of discretion can be described as a situation when a trial court fails to engage in a sound reasoning process. *State v. Banks*, 2023-Ohio-292, ¶ 9 (4th Dist.), citing *State v. Darmond, supra*, at ¶ 34.

{¶30} Moreover, when applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *In re Jane Doe 1, supra*, at 138, citing *Berk v. Matthews, supra*, at 169. As

this Court explained in *Gerken v. State Auto Ins. Co. of Ohio*, 2014-Ohio-4428, ¶ 33, upon employing an abuse of discretion standard of review to affirm a decision we likely would not have issued:

> In essence our decision on this issue reflects the reality that the abuse of discretion standard of review allows the trial court to make a decision that we as reviewing judges find less than perfect. As long as the court's decision is based upon substantiated fact and logical reasoning, we are duty-bound to approve it even though we would not have reached the same conclusion were it ours to make initially.

*Gerken* further essentially states that when a trial judge's decision is logically supported by facts, "we cannot second-guess him from our position, which is far removed from the context of the proceedings in his court." *Id.* at ¶ 34.

{¶31} Based upon the above analysis, we find no abuse of discretion on the part of the trial court in dismissing the underlying case with prejudice, even though it was the harshest available sanction, and even if it was a sanction this Court might not have imposed ourselves. The trial court inquired into the circumstances of the discovery violation, considered the required factors, and engaged in a sound reasoning process in reaching its decision. As such, we find no merit to arguments raised by the State and, therefore, the sole assignment of error is overruled. Accordingly, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Wilkin, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**